Per Curiam,
The question of Mrs. Protheroe’s ownership of the goods sold by the sheriff was fairly submitted to the jury. That she had title at one time to the stock of goods in the store was established by uncontradicted evidence. It had formerly been sold by the sheriff upon an execution against her husband, and bought in by the execution creditor in her interest. Subsequently, upon the application to the court of common pleas, she was allowed to enjoy her separate earnings under the Act of 1872. She was thus fully equipped for business. She had a stock of goods, the title to which was unassailable, and was entitled to her separate earnings. So far, I do not understand the case of the plaintiff below to be questioned. It was alleged, however, that subsequently she became a partner with R. J. Protheroe & Co., or, at least, permitted her stock of goods to be mingled with that of said firm. There was some conflict of evidence on this question; in one instance she was shown to have signed a check in the name of that firm. All this was submitted to the jury, and they have found that the goods belonged to the plaintiff. We see no serious error in the manner of its submission. The bond of indemnity might well have been excluded (see first and third assignments), but its admission could have done the defendants no harm. The only effect it could have had was upon the question of damages. The learned judge, however, distinctly told the jury that they could not give punitive damages, but must confine themselves to the actual value of the goods at the time of the sale. It is apparent from the verdict that the jury did not disregard this instruction.
It was not error to instruct the jury that James L. Connell, trustee, had no standing to contest the right of Mrs. Protheroe under the sheriff’s salé made by her father in 1885 ; and,, while it is true that the sheriff might have protected himself from an action of trespass by applying to the court for a rule to interplead, in point of fact he did not do so, and of course cannot claim now the protection of the interpleader Act. In this view, I cannot even guess intelligently at the object of the defendant’s fourth point. The learned *422 judge might well have refused to answer it. He did answer it at some length, and the point and answer, taken together, form a rather interesting statement of what might have happened in some other case. We see nothing else in the record requiring comment.
Judgment affirmed.
Petition for re-argument.
The petition averred that the fact that counsel for defendants in error were not heard, instead of being an advantage, seemed to have been a serious detriment; for, by reason of it, the opportunity was lost of replying to the very arguments which have availed in the mind of the court to sustain the judgment, while practically reversing the court below.
While very little evidence was offered as to the value of the goods, enough was given to discredit the inventory. Old articles were appraised at more than their original cost. The goods brought at sheriff’s sale only $275.25, though the testimony is that they were sold, in small lots at fair prices. It does not, therefore, follow that the jury allowed no punitive damages, because their verdict was about the sum demanded by the plaintiffs as compensation. If the admission of the bond was error, we think it was reversible error.
The main question all through the case was not how much the plaintiffs should recover, but whether they were entitled to recover at all. That being the question, and the evidence [as stated in the above report] leaving it very delicately balanced, plaintiff’s 4th point, suggesting as it does high-handed, overbearing precipitancy of action on the part of the defendants, was enough to turn the scale.
Per Curiam,
April 1, 1889.
Re-argument refused.
WM. M. S., JR.